**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| United States of America, | Case No.: 2:19-cr-00270-JAD-BNW |
|---|---|
| Plaintiff | |
| v. | **Order Denying Motion to Supplement Record and Motion to Vacate or Set Aside Sentence** |
| Robert C. Marshall, | |
| Defendant | [ECF Nos. 202, 244] |

Defendant Robert C. Marshall pled guilty to one count of wire fraud for bilking more than 200 people out of $5 million in a 2014–15 Ponzi scheme.[1]  In 2023, he was sentenced to 34 months in prison and ordered to pay approximately $3.5 million in restitution to victims of the scheme.[2]  In February 2025, Marshall filed a pro se motion to vacate or set aside his sentence under 28 U.S.C. § 2255, contending that his counsel provided ineffective assistance before and after he entered his plea, the government violated *Brady v. Maryland* by failing to produce evidence, and the government breached the plea agreement.  Marshall retained counsel, and in a counseled reply, he abandons all but one and a half claims related to his counsel's failure to retain a forensic accounting expert to rebut the government's restitution calculation.[3]

Marshall took the position in his motion that his sentencing counsel hired an accounting expert but told him that the expert "ran off with the money" and didn't provide a report.  At the sentencing hearing, however, Marshall's counsel told the court that he had a forensic accountant review the government's restitution calculation and she didn't find any discrepancies.  Since

---

[1] ECF No. 99 (plea agreement).

[2] ECF No. 178 (judgment).

[3] ECF No. 239.

briefing on the § 2255 motion began, Marshall learned that a final expert report on restitution was completed by the defense expert. Marshall contends that he never saw that final report and, if he had, he would have been able to point out discrepancies that would have lowered his restitution obligation. So he also moves to expand the record on these proceedings and to seek interrogatory responses from his sentencing counsel and the forensic accountant to figure out what happened.

I deny both motions. Marshall has not shown that his pre-plea-agreement counsel's failure to retain an accounting expert prejudiced him. And his sixth claim—that sentencing counsel was deficient for failing to do the same—is not cognizable. Section § 2255 motions are available solely to challenge custody, not restitution, and Marshall conceded in his reply that his sixth claim for relief is "relevant solely due to its impact on [] Marshall's restitution amount. All other claims are moot as his sentence was completed."[4] Marshall's attempts to reshape that claim into one that affects the validity of his plea agreement (and thus his sentence) fail.

**Background**

**A.      Marshall pled guilty to one wire-fraud count and was sentenced to 34 months in custody and ordered to pay $3.5 million in restitution.**

Marshall was indicted in 2019 on several counts of wire fraud and money laundering.[5] In 2021, the grand jury returned a superseding indictment charging Marshall with five counts of wire fraud, nine counts of money laundering, and four counts of bank fraud—with some of those charges stemming from Marshall's conduct while he was on pretrial release.[6] Later that year

---

[4] ECF No. 239 at 5.

[5] ECF No. 1 (indictment).

[6] ECF No. 62 (superseding indictment).

2

Marshall pled guilty to one of the wire-fraud counts, and the government agreed to dismiss the remaining charges.[7]  The written plea agreement required Marshall to pay full restitution to all of the victims of his fraudulent scheme.  It acknowledged that the "parties currently believe that the applicable amount of restitution is approximately" $3.5 million, "but [the parties] recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing[.]"[8]

On January 4, 2023, Marshall was sentenced to 34 months in prison, followed by 2 years of supervised release.[9]  The court held a separate hearing on restitution ten months later.  The government's forensic accountant testified to the number of investors who were duped by Marshall's scheme, how much they paid in, and how much Marshall returned.[10]  The accountant explained that investors who profited or broke even from the scheme were not included in the restitution calculation, and neither were amounts that were invested from unknown individuals. He determined that investors had lost $3,189,698 from the scheme and that Marshall owed an additional $312,379.16 for bank-fraud charges that occurred while he was awaiting trial on the wire-fraud counts.  Marshall's sentencing lawyer William Horvath informed the court that he had spoken with his client and hired a forensic account to review the government's proffer but could not "find discrepancies at this time."[11]  He noted that there may be some "outstanding numbers

---

[7] ECF No. 98 (minutes of plea hearing); ECF No. 99 (plea agreement).

[8] ECF No. 99 at 5–6.

[9] ECF Nos. 154, 157.

[10] *See* ECF No. 207 (transcript of restitution hearing).

[11] *Id.* at 30:6–9.

on the restitution number" but submitted to the government's restitution calculation.[12]  So I found that Marshall owed $3,502,077.16 in restitution and added that amount to the judgment.[13]

Marshall was ordered to self-surrender to the Bureau of Prisons on February 7, 2024.[14] His self-surrender date was continued to later that month, and I denied further attempts to continue that date.[15]  When it came time for Marshall to turn himself in, however, he went on the lam, so I issued a warrant for his arrest.[16]  He was arrested five months later and began serving his sentence on July 31, 2024.[17]  Marshall was released from the Bureau of Prisons in February of this year.

**B.      Marshall's motion to vacate his sentence challenges his counsel's failure to refute the government's restitution calculations.**

In November 2024, Marshall filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[18]  He filed an amended motion in February 2025.[19]  Marshall originally asserted six claims: (1) ineffective assistance of counsel (IAC) for allowing him to sign an "ambiguous" plea agreement that did not specify Marshall's restitution obligations and failing to retain an independent forensic expert; (2) the government breached the plea agreement by failing to provide better financial discovery; (3) the government violated *Brady v. Maryland* by failing to disclose financial discovery until six days before his sentencing hearing; (4) IAC for failing to

---

[12] *Id.* at 30:12–22.

[13] *Id.* at 31:1–19.

[14] ECF No. 175 (minutes of restitution hearing).

[15] ECF Nos. 186, 188, 191.

[16] ECF Nos. 192, 194.

[17] ECF No. 196.

[18] ECF No. 198.

[19] ECF No. 202.

seek dismissal of the indictment; (5) IAC for agreeing to continuances that Marshall did not agree to, in violation of his right to a speedy trial; and (6) IAC for failing to obtain financial discovery and not objecting to the government's restitution evidence at the restitution hearing.[20]

While the parties were briefing Marshall's § 2255 motion, Marshall completed his custodial sentence and retained counsel. He filed a counseled reply, which conceded that claims 2–5 and part of claim 1 were moot because he was no longer in custody.[21] It appears that Marshall maintains his first claim that his pre-guilty-plea counsel was ineffective for failing to retain an independent forensic expert to opine on the accuracy of the government's loss and restitution amounts.[22] And he reasserts his sixth IAC claim "solely due to its impact on [his] restitution amount."[23]

Marshall also moves for an order allowing him to take limited discovery and expand the scope of these proceedings.[24] He argues that new evidence has come to light contradicting his understanding that the forensic accounting expert his sentencing counsel hired had "run off with the money" and never finished a report on the government's restitution calculations. While briefing his motion, Marshall obtained a final report from forensic accounting expert Theresa Mains.[25] The report, dated November 6, 2023 (the day before Marshall's restitution hearing), concludes that the loss amount for the wire-fraud count is "materially accurate." She also went through some of Marshall's defenses—including his contentions that he entered settlement

---

[20] *Id.*

[21] ECF No. 239 at 5.

[22] *Id.* at 3–4.

[23] *Id.* at 5.

[24] ECF No. 244.

[25] *See* ECF No. 244-2.

agreements with some investors and that he allowed some investors to get a refund of "store credit" that could then be used to buy investments in one of his other companies—and concluded that those defenses "have been rebutted, are illogical based on accounting standards," or cannot "be substantiated by any evidence . . . ."[26]

Marshall alleges that the "information used to create the [] [r]eport was incomplete" because it was missing purported evidence of repayments to victims "utilizing legitimate sources of income separate from income derived from the alleged fraud scheme."[27]  He believes that Mains should be compelled to answer interrogatories asking whether having that information would have changed the outcome of her report and whether she spoke with Marshall regarding additional information he may have concerning legitimate sources of income.[28]  And he seeks information from Horvath to determine what he told Marshall about the expert report and whether he provided the report to Marshall before the restitution hearing.[29]  Marshall contends that this information is relevant to his sixth claim for relief.[30]

## Discussion

A federal prisoner may attack the legality of his conviction under 28 U.S.C. § 2255 by showing that "the sentence was imposed in violation of the Constitution or the laws of the United States," "the court was without jurisdiction to impose such a sentence," the sentence was in "excess of the maximum authorized by law," or the sentence is "otherwise subject to collateral

---

[26] *Id.* at 4.

[27] ECF No. 244 at 2.

[28] *Id.* at 4.

[29] *Id.* at 5.

[30] *Id.* at 4–5.

attack."[31]  If the court so finds, it must "vacate and set the judgment aside and . . . discharge the prisoner[,] resentence him[,] grant a new trial[,] or correct the sentence as may appear appropriate."[32]  A prisoner filing a claim for federal habeas relief under § 2255 is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[33]  No evidentiary hearing is warranted if the petitioner's "allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."[34]  And a defendant who fails to raise a claim on direct review is deemed to have procedurally defaulted it and may only raise it later in a habeas petition if he can demonstrate cause and actual prejudice, or actual innocence.[35]

**A.      Marshall's remaining claims for ineffective assistance of counsel are meritless.**

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[36]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[37]  In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective

---

[31] 28 U.S.C. § 2255(a).

[32] *Id.* at § 2255(b).

[33] *Id.*; *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) ("We have characterized this standard as requiring an evidentiary hearing where 'the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'") (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).

[34] *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) (cleaned up).  I find this motion suitable for resolution without an evidentiary hearing.

[35] *Bousley v. United States*, 523 U.S 614, 622 (1998) (citations omitted).

[36] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[37] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[38] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[39]

A reasonable probability is "probability sufficient to undermine confidence in the outcome."[40] Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[41] "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[42] The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[43]

Both prongs of the *Strickland* inquiry must be satisfied to establish constitutionally ineffective assistance of counsel; a failure to satisfy either requires that the petitioner's claim be denied.[44] Federal courts need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong."[45] Conversely, courts "need

---

[38] *Id.* at 690.

[39] *Id.* at 694.

[40] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[41] *Strickland*, 466 U.S. at 689.

[42] *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

[43] *Id.*

[44] *Strickland*, 466 U.S. at 697.

[45] *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir.), *cert. denied*, 525 U.S. 839 (1998).

not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[46]

Neither of Marshall's remaining IAC claims has merit. Marshall concedes in his reply that his release from custody moots his claims, leaving only issues of restitution. But the Ninth Circuit has foreclosed § 2255 relief related to restitution orders. In *United States v. Thiele*, the panel explicitly found that a federal defendant "cannot collaterally attack his restitution order in a § 2255 motion," agreeing with sister circuits holding that "by its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released."[47] The *Thiele* court also held that "couch[ing ] restitution claims in terms of ineffective assistance of counsel" does not save them.[48] So Marshall's acknowledgment that he has been released and that his claims go just to restitution concedes the invalidity of his claim.

To the extent that Marshall's claims remain cognizable because he remains under supervised release, he has not shown that they have merit. He argues that the attorney who represented him before he entered a plea agreement was ineffective because he did not hire a forensic accountant at the beginning of the case to investigate the government's restitution and loss figures. But absent from the record is any proof that having a forensic expert analyze this case would have yielded a different result.[49] So I cannot conclude that counsel's failure to obtain

---

[46] *Strickland*, 466 U.S. at 697.

[47] *United States v. Thiele*, 314 F.3d 399, 401 (9th Cir. 2002) (citing *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) (collecting cases)).

[48] *Id.* at 402.

[49] Indeed, the forensic expert that Marshall's sentencing counsel did hire to review the restitution evidence in this case agreed with the government's calculation. *See* ECF No. 244-2. I address the impact (or lack thereof) of this additional restitution report *infra*.

an independent assessment of the restitution and loss amounts before Marshall entered his guilty plea was deficient or prejudiced him.

Marshall's claim that his sentencing counsel was similarly ineffective for failing to retain a forensic accounting expert fares no better.  Marshall's counsel did in fact hire an expert, and that expert opined that the government's calculations were correct.  Marshall points to "inconsistencies between the record, what he was told by his prior attorneys[,] and the actions of the hired forensic accountant."[50]  But Marshall hasn't shown that any of those alleged inconsistencies lead to the inference that counsel's performance was deficient or prejudiced him. So, on the current record, I find that Marshall has not established his entitlement to relief.

**B.      Marshall has not shown that expanding the proceedings is warranted.**

Marshall contends that his discovery of the defense's forensic-accounting report requires expanding the record to "seek the truth and to answer unresolved questions" related to his ground-six claim for ineffective assistance of sentencing counsel.[51]  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."[52]        Under the Rules Governing § 2255 Proceedings, the court may permit discovery for good cause, and it may "direct the parties to expand the record by submitting additional materials relating to the motion."[53]  A movant may show good cause if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."[54]

---

[50] ECF No. 239 at 5.

[51] *Id.* at 6.

[52] *Bracy v. Gamley*, 520 U.S. 899, 904 (1997).

[53] Rules 6 & 7 of the Rules Governing § 2255 Proceedings.

[54] *Bracy*, 520 U.S. at 908–09.

Marshall contends that he did not receive the final report from the forensic accounting expert that his sentencing counsel retained until January of 2026—long after his restitution hearing. After reviewing that report, he now alleges that the expert did not have information that would have supported the position that the restitution amount was erroneous. He asks for the opportunity to propound interrogatories on sentencing counsel and the expert so he may determine whether that information would have changed the expert's conclusions and whether sentencing counsel provided Marshall with the report before the restitution hearing.[55]

Marshall has not shown good reason to believe that the development of these facts would demonstrate that he is entitled to relief. Marshall is still challenging just his restitution amount, which is not permitted through a § 2255 motion. He attempts to get around this blockade by claiming that, because the "parties agree[d] to [a] specific restitution amount within the Plea Agreement, . . . any invalid restitution order would impact the validity of the plea agreement and the conviction rendering such sentencing phase ineffective assistance of counsel [claim] viable under 28 U.S.C. § 2255[.]"[56] But the plea agreement did not contain a specific restitution amount—it estimated that the amount was likely to be about $3.8 million but noted that the parties also "recognize[d] and agree[d] that this amount could change based on fact that come to the attention of the parties prior to sentencing."[57] Marshall agreed to a plea that assumed restitution in an amount greater than what ended up being imposed. Marshall does not explain how an expert report confirming that lower amount would have impacted his willingness to enter a plea agreement, or how that information somehow renders the plea invalid.

---

[55] ECF No. 244.

[56] ECF No. 247 at 2.

[57] ECF No. 99 at 6.

Nor does he demonstrate that his counsel's alleged failure to provide him with the final report before his restitution hearing would have impacted the validity of his plea. At most, he wishes to introduce evidence purporting to show that he settled with some of his victims using "legitimate sources of income."[58] But Marshall doesn't contend that he was unable to obtain that evidence in his own possession before his restitution hearing or that sentencing counsel was somehow ineffective for failing to find it. So I cannot conclude that Marshall has shown good cause to expand the record and permit discovery. I thus deny his motion to vacate his sentence.

## C.    A certificate of appealability is denied.

To appeal this order, Marshall needs a certificate of appealability from a circuit or district judge.[59] In deciding whether to grant one, I consider if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[60] Although this standard is "lenient,"[61] I find that Marshall does not meet it. So I deny him a certificate of appealability.

## Conclusion

IT IS THEREFORE ORDERED that Robert C. Marshall's motion to vacate, set aside, or correct sentence and motion to expand the record **[ECF Nos. 202, 244] are DENIED**. A certificate of appealability is **DENIED**.

---

[58] ECF No. 244 at 2.

[59] 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1).

[60] *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quotation marks omitted).

[61] *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc).

The Clerk of Court is directed to **enter a separate civil judgment denying Marshall's § 2255 motion and denying a certificate of appealability**. The Clerk must also file this order and the civil judgment in this case and in the related case 2:24-cv-02104-JAD.

_____
U.S. District Judge Jennifer A. Dorsey
April 24, 2026

13